UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

JOHN BEHRMANN,

                          Plaintiff,              06 Civ. 51 (JGK)

        - against -                          OPINION AND ORDER

HARRY FARRELL ET AL.,

                          Defendants.

_____

JOHN G. KOELTL, District Judge:

        The plaintiff, John Behrmann, a member of Local 1-2,
Utility Workers Union of America ("Local 1-2"), a local
labor union representing employees of utility companies in
the New York City area, alleges that the leaders of Local
1-2 breached their fiduciary duties and wasted union assets
by retaining former Local 1-2 officer Joseph Flaherty as a
paid consultant to the union.  The plaintiff has sued Harry
Farrell, the President of Local 1-2, Flaherty, and others.
The plaintiff's claims arise from allegations that Flaherty
had mismanaged Local 1-2's assets during a term he served
as the union's chief officer and in particular from an
agreement Flaherty signed with the national union—Utility
Workers Union of America ("UWUA")—in 1999, in consideration
for the dismissal of claims related to his alleged
financial transgressions.  The plaintiff alleges that in
that agreement Flaherty promised not to seek office or

1

employment in Local 1-2 and not to participate in its internal affairs.

Specifically, the plaintiff alleges that the defendants' decision to retain Flaherty as a consultant "ignores" Flaherty's previous failure to safeguard Local 1-2's assets, which led the UWUA to oust Flaherty and impose a trusteeship over Local 1-2.  The plaintiff further alleges that Local 1-2's hiring of Flaherty as a consultant violated the terms of the agreement Flaherty signed with the UWUA.

The plaintiff asserts two principal claims:  (1) violation of § 501 of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 501, based on the alleged breaches of fiduciary duties and wasting of union assets, and (2) violations of sections 722 and 723 of the New York State Labor Law, based on the same conduct.

Because § 501 of the LMRDA contains an unusual pleading provision requiring union members to seek leave of the court based upon a verified application and "good cause shown" before bringing an action against union officers or agents,[1] the plaintiff first sought permission to bring suit

_____

[1]   This heightened pleading requirement appears in 29 U.S.C. § 501(b), which is the portion of the LMRDA authorizing suits by union members for breaches of fiduciary duties by an "officer, agent, shop steward, or representative" of their union.  The language requiring heightened pleading reads:  "No such proceeding shall be brought except upon leave

against the defendants by an ex parte application before Judge Barbara S. Jones.  Judge Jones granted the plaintiff's ex parte motion by memo endorsement on January 4, 2006, allowing this action to proceed.

The defendants[2] have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 29 U.S.C. § 501(b) for lack of subject matter jurisdiction.  The defendants allege that the plaintiff wrongly obtained leave to bring this action because the plaintiff misled the court in his ex parte application and because the plaintiff cannot show "good cause" supporting his allegations of breach of fiduciary duties and wasting of union assets, as required by § 501(b).

For the reasons explained below, the Court **grants** the defendants' motion with respect to all defendants and **dismisses** the plaintiff's two causes of action.

---

of the court obtained upon verified application and for good cause shown, which application may be made ex parte."  29 U.S.C. § 501(b). The purpose of the requirement is to prevent "vexatious and harassing suits" against union officials.  <u>Dinko v. Wall</u>, 531 F.2d 68, 74 (2d Cir. 1976).

[2]   Defense counsel clarified in oral argument that this motion is in fact on behalf of all defendants, and the Court will treat it as such.

**I.**

**A.**

The defendants move to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and 29 U.S.C. § 501(b).  While some courts have treated motions to dismiss claims under 29 U.S.C. § 501(b) as challenges to the court's subject matter jurisdiction pursuant to Rule 12(b)(1), see, e.g., Commer v. McEntee, 145 F. Supp. 2d 333, 338–39 (S.D.N.Y. 2001), aff'd in relevant part, 34 Fed. Appx. 802 (2d Cir. 2002); Charles v. Am. Fed. of Musicians, 241 F. Supp. 595, 598 (S.D.N.Y. 1965), and other courts have dismissed § 501(b) claims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, see, e.g., Mead v. Brotherhood of Railway, Airline & Steamship Clerks, 378 F. Supp. 774, 775 (W.D.N.Y. 1974), aff'd, 512 F.2d 398 (2d Cir. 1975), the prevalent practice has been to treat such motions as motions to deny leave or to vacate an order granting leave to bring suit for failure to meet the special requirements of 29 U.S.C. § 501(b).  See Dinko v. Wall, 531 F.2d 68, 73 (2d Cir. 1976) (noting that the court can allow a complaint by ex parte motion and then "allow[] defendants to move, in effect, to vacate that order"); Shea v. McCarthy, No. 91 Civ. 0588, 1991 WL 41642, at *4 (S.D.N.Y. March 18, 1991)

(following <u>Dinko</u> in declining to characterize a deficiency in meeting the requirements of 29 U.S.C. § 501(b) as a lack of subject matter jurisdiction), <u>rev'd</u> <u>on</u> <u>other</u> <u>grounds</u>, 953 F.2d 29 (2d Cir. 1992); <u>see</u> <u>also</u> <u>Saunders v. Hankerson</u>, 312 F. Supp. 2d 46, 64-65 (D.D.C. 2004) (construing the defendant's jurisdictional challenge as a motion to vacate the court's prior finding of "good cause" under 29 U.S.C. § 501(b)).  Hence, the Court will construe the defendants' motion to dismiss as a motion to vacate Judge Jones's order granting leave to sue for failure to comply with the requirements of § 501(b) and thereby to dismiss the Complaint as unauthorized.[3]

Because § 501(b) imposes the "unusual" requirement that a plaintiff must obtain leave upon good cause shown to proceed with a suit, <u>Dinko</u>, 531 F.2d at 74, a court may "look somewhat beyond the complaint" in deciding a motion to vacate an order granting leave to sue pursuant to §

---

[3]   In <u>Moran v. Flaherty</u>, No. 92 Civ. 3200, 1993 WL 60898 (S.D.N.Y. Feb. 26, 1993), a prior case dismissing breach of fiduciary duty claims pursuant to 29 U.S.C. § 501 filed against the present defendant Joseph Flaherty, the court observed:

> [A]s the standard applied . . . in determining whether the section 501 claims are supported by good cause is stricter than that applied on a motion to dismiss, it is unnecessary to separately assess each claim under the motion [to] dismiss standard:  if good cause is shown, the claims clearly are sufficient to withstand a motion to dismiss; if good cause is not shown, plaintiffs are not entitled to pursue these claims and, accordingly, they must be dismissed.  Thus, the discussion of the motion to dismiss is subsumed within the discussion of the requirements of section 501(b) . . . .

<u>Id.</u> at *10 n.5.

501(b), <u>id.</u> (quoting <u>Horner v. Ferron</u>, 362 F.2d 224, 229

(9th Cir. 1966)); <u>see</u> <u>also</u> <u>Moran v. Flaherty</u>, No. 92 Civ.

3200, 1993 WL 60898, at *6 (S.D.N.Y. Feb. 26, 1993) ("In

determining whether good cause exists for plaintiffs'

claims, the Court may consider matters outside the

complaint.").   The Court of Appeals explained:

> The factual showing to institute a suit should be
> no more demanding than that required to defend it
> against a motion for summary judgment; indeed, it
> should be somewhat less, since at the earlier
> stage a plaintiff has not yet had a chance for
> discovery and a defendant will still have the
> later protection of a summary judgment motion.

<u>Dinko</u>, 532 F.2d at 75.

**B.**

The following facts are undisputed unless otherwise

noted.

The plaintiff Behrmann is a member in good standing of

Local 1-2 (Verified Compl. ¶ 3) and an employee of

Consolidated Edison Company of New York, Inc. (Mem. in

Supp. of Ex Parte M. for Permission to Bring Suit ("Ex

Parte Mem."), at 1).

Among the defendants, Harry Farrell is the current

President of Local 1-2, John Duffy is the current Vice

President, Lucia Giacometti is the Secretary-Treasurer, and

Walter Eberle is the Chairman of the Executive Board.  (V.

Compl. ¶¶ 4, 6.)  The President, Vice President, and

Secretary-Treasurer are the three highest officers of Local 1-2, and the Executive Board is the governing body of the local union which acts on behalf of its membership between membership meetings.  (V. Compl. ¶¶ 4, 6.)  Farrell, Duffy, and Giacometti were elected to office in a special election on June 11, 2005 and took office on June 20, 2005.  (V. Compl. ¶ 4.)

In a declaration attached to the defendants' Motion to Dismiss, Farrell alleges that his slate of officers campaigned in part on its proposal to "obtain the experience and assistance of Joseph Flaherty, who had been an officer of the Local for many years prior to 1999." (Decl. of Harry Farrell, Jan. 26, 2006, ¶¶ 12-13.)  In his Ex Parte Memorandum, the plaintiff alleges that the consequences of the June 11, 2005 special election are under challenge in a different forum.  (Ex Parte Mem. 4 n.1.)  Farrell alleges that the plaintiff ran against Farrell for President and lost in the June 2005 election (Farrell Decl. ¶ 11); the plaintiff's pleading and other papers are silent on this point.

Joseph Flaherty is currently a paid consultant to Local 1-2 and was appointed by Farrell on or about July 1, 2005.  (V. Compl. ¶ 5.)  Flaherty previously served as Business Manager, the highest executive officer of Local 1-

2, between 1996 and 1998.  (V. Compl. ¶ 8; Ex Parte Mem.
4.)

In 1998, the national union placed Local 1-2 in
trusteeship based on charges that Flaherty wasted $2.5
million of the local union's assets.  (V. Compl. ¶ 8.)  Two
cases litigated in the Southern District of New York before
Judge Loretta Preska, UWUA v. Local 1-2, 98 Civ. 5449, and
Flaherty v. Wightman, 98 Civ. 2723, concerned the validity
of the UWUA's imposition of a trusteeship and removal of
Flaherty.  (V. Compl. ¶ 9.)

On June 14, 1999, Flaherty, individually and on behalf
of the Justice Party which he led, signed an agreement
("the 1999 Agreement") with Donald Wightman, the National
President of the UWUA.  (Decl. of Donald E. Wightman, Feb.
28, 2005, ¶ 15, Ex. 5 to Affirmation of Malcolm A.
Goldstein; see also V. Compl. ¶ 10.)  The 1999 Agreement
provided, among other things, that all of the pending
lawsuits between Flaherty, Local 1-2, and the UWUA would be
dropped and that Flaherty would not "run for office or
accept employment in Local 1-2, and [would] not become
involved, directly or indirectly, in the internal affairs
or elections of the Local," with certain exceptions not
relevant to the allegations in this case.  (Ex. 1 to
Goldstein Affirmation; see also V. Compl. ¶ 10.)  After the

1999 Agreement was signed, Flaherty served as a vice president of the national UWUA union from 1999 to 2003. (Farrell Decl. ¶ 15.)  President Wightman of the UWUA alleged that he agreed to let Flaherty hold office in the national union even after removing him from his leadership role in the local union "so long as the position did not provide Flaherty with the authority to make important decisions on his own requiring the expenditures of significant Union funds."  (Wightman Decl. ¶ 12.)

When Flaherty then sought to run for President of Local 1-2 in the election of June 11, 2005, the UWUA sued in federal court and succeeded in procuring an injunction barring Flaherty from running based on the terms of the 1999 Agreement.  (V. Compl. ¶ 11; Farrell Decl. ¶ 16; UWUA v. Flaherty, 05 Civ. 998 (S.D.N.Y. March 9, 2005).)

Some time after the June 11, 2005 election, Farrell's winning slate asked the national union whether Flaherty could provide services to Local 1-2 without violating the 1999 Agreement between Flaherty and the UWUA.  (Farrell Decl. ¶ 16.)  UWUA President Wightman responded that the 1999 Agreement did not bar Flaherty from working for Local 1-2 as a consultant, in which capacity he would not be a member of the union and would not have any right to run for office or to vote in Local 1-2 elections or on other

9

matters.  (Farrell Decl. ¶ 17.)  The newly elected
Executive Board approved Flaherty's retention as a
consultant at its July 27, 2005 meeting.  (Farrell Decl. ¶
20.)  Flaherty's duties include assisting in collective
bargaining, shop steward training, writing Local 1-2's
publication The Record, public relations, legislative
affairs, retiree coordination, and the implementation of
union policies.  (Farrell Decl. ¶ 17.)

On or about August 8, 2005, the plaintiff wrote
Farrell a letter seeking information about the
circumstances under which Local 1-2 had retained Flaherty
as a paid consultant.  (V. Compl. ¶ 12.)  The plaintiff
received no reply to this letter.  (V. Compl. ¶ 13.)

According to Local 1-2's usual practice, the
membership hears the minutes of Executive Board meetings at
its membership meetings and the membership votes to accept
and approve these minutes, thus ratifying the Board's
actions as reflected in the minutes.  (Farrell Decl. ¶ 21.)
The minutes of the Board's July 27, 2005 meeting were read
at a membership meeting on September 6, 2005.  (Farrell
Decl. ¶ 22.[4])  The plaintiff was present at the September 6,

---

[4]   Paragraph 22 of Farrell's Declaration refers to a membership meeting
on "September 6, 1999," but this is a plainly mistaken reference to a
meeting on "September 6, 2005."  The plaintiff does not dispute
Farrell's characterization of his presence or participation at that
meeting.

2005 meeting and spoke with respect to the motion to accept and approve the Executive Board minutes. (Farrell Decl. ¶ 23.) Farrell alleges that the plaintiff asked about the retention of Flaherty, and that Farrell responded that the national union had agreed that Flaherty's consultant status did not violate the 1999 Agreement. (Farrell Decl. ¶ 23.) Farrell alleges, "After hearing Mr. Behrmann's question and my answer, the membership voted to accept the Executive Board action retaining Mr. Flaherty." (Farrell Decl. ¶ 25.)

On September 19, 2005, the plaintiff wrote a letter to Farrell, copying the co-defendants Giacometti as Secretary-Treasurer of Local 1-2 and Walter Eberle as Executive Board Chairman, asking the Local 1-2 leadership to conduct a formal inquiry into the circumstances surrounding Flaherty's retention as a paid consultant. (V. Compl. ¶ 14; Farrell Decl. ¶ 26.) In this letter, the plaintiff specifically appealed to the provisions of the LMRDA, 29 U.S.C. § 501(b), asking Local 1-2 to apply rigorously the provisions of the LMRDA to "the retention of Mr. Flaherty's service as a consultant to Local 1-2, including, but not limited to, a formal inquiry and accounting and possibly even commencing federal litigation." (Letter from Behrman

to Farrell, Sept. 19, 2005, Ex. 6 to Behrmann Aff., Jan. 4, 2006.)

On September 28, 2005, Farrell wrote a responsive letter to the plaintiff's September 19 letter. (Farrell Decl. ¶ 27.) Farrell's response was sent to the plaintiff by both regular and certified mail (Farrell Decl. ¶ 8) and published (along with the plaintiff's September 19 letter) in the November 2005 issue of The Record, which is posted on Local 1-2's website (Farrell Decl. ¶ 28; Behrmann Aff., March 8, 2006, ¶ 2). In his response, Farrell stated that the membership of Local 1-2 had approved the contract retaining Flaherty as a consultant and that President Wightman of the UWUA had approved the contract and confirmed that it did not violate the 1999 Agreement. (Letter from Farrell to Behrmann, Sept. 28, 2005, Ex. B to Farrell Decl.)

The plaintiff alleges that he never personally received Farrell's September 28 letter. (V. Compl. ¶ 15.) The plaintiff alleges that he has not regularly resided at his given home address since the fall of 2004 "[b]ecause of certain private domestic difficulties" and that his mail is not being forwarded to him. (Behrmann Aff., March 8, 2006, ¶ 2.) The plaintiff also alleges that he does not have regular access to a computer and did not see the November

2005 issue of The Record that reprinted his letter and Farrell's response. (Behrmann Aff., March 8, 2006, ¶ 2.)

The plaintiff sent a letter to UWUA President Wightman on October 6, 2005 alleging that Local 1-2's officers had failed to respond to the plaintiff's September 19 letter to Farrell and requesting that the national union intervene to compel Local 1-2 to investigate Flaherty's employment status and to take remedial action to protect Local 1-2's assets. (Farrell Decl. ¶ 27; Letter from Behrmann to Wightman, Oct. 6, 2005, Ex. C to Farrell Decl.)

On October 21, 2005, Farrell wrote a letter to UWUA President Wightman informing Wightman that Farrell had received the plaintiff's September 19 letter and had responded to it on or about September 28. (Letter from Farrell to Wightman, Oct. 21, 2005, Ex. D to Farrell Decl.) Both Farrell's Oct. 21 letter to Wightman and Farrell's September 28 response to the plaintiff were hand delivered to the plaintiff at his workplace on or about October 24, 2005. (Farrell Decl. ¶ 28; see also Behrmann Aff., March 8, 2006, ¶ 3.)

The plaintiff alleges that he received a sealed envelope at work from a union Business Agent some time in October 2005. (Behrmann Aff., March 8, 2006, ¶ 3.) The plaintiff alleges that he placed the envelope in a folder

on his desk and did not open it, because he is not allowed to review union documents while at work, and that "[s]hortly thereafter, this folder was removed from my desk without my knowledge." (Behrmann Aff., March 8, 2006, ¶ 3.)

On November 1, 2005, President Wightman sent the plaintiff a letter in response to the plaintiff's October 6 letter. (Letter from Wightman to Behrmann, Nov. 1, 2005, Ex. A to Farrell Decl.) In his November 1 letter, Wightman stated that Local 1-2's retention of Flaherty does not violate the 1999 Agreement, "provided that he does not become involved, either directly or indirectly, in the internal affairs or elections of Local 1-2." Wightman also stated that he had received no evidence that Flaherty's duties involved him either directly or indirectly in the internal affairs of the local.

Along with his responsive papers to Farrell's Motion to Dismiss, the plaintiff submitted an affidavit of Robert Zahn, a member of Local 1-2 who unsuccessfully ran for Vice-President in the June 11, 2005 elections. (See Aff. of Robert Zahn, March 9, 2006.) Zahn alleges that the number of paid "senior officials" of Local 1-2 increased by one when Flaherty was retained as a consultant. (Zahn Aff. ¶ 3.) Zahn, who is not a trained accountant (Zahn Aff. ¶

14

5), alleges that his review of Local 1-2's financial
disclosure filings for recent years suggests that expenses
have been reduced in the categories of arbitration,
education, and member benefits in order to pay Flaherty's
consulting fee.  (Zahn Aff. ¶ 6(a).)  Zahn also alleges
that Local 1-2 has taken on a $125,000 line of credit since
the new administration took office (Zahn Aff. ¶ 6(b)) and
that the current administration "has transferred $214,415
from Defense Fund assets into Local 1-2's General Fund"
(Zahn Aff. ¶ 6(c)).

## II.

The defendants raise three primary arguments in
support of their motion to dismiss:  (1) the plaintiff has
failed to allege any breach of fiduciary duties as defined
by § 501(a); (2) the plaintiff has failed to make a good
cause showing as required by 29 U.S.C. § 501(b); and (3)
the plaintiff improperly procured leave to bring this suit
by making material misrepresentations to the court.  These
arguments are treated together below because they are all
relevant to the "good cause" requirement of § 501(b), upon
which Farrell's motion ultimately turns.

### A.

Section 501(a) defines the fiduciary duties owed by officers and agents of a labor union to the union and its members.  It reads, in relevant part:

> The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group.  It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. . . .

Section 501(b), which empowers union members to sue union fiduciaries under certain circumstances, reads:

> When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of

> competent jurisdiction to recover damages or
> secure an accounting or other appropriate relief
> for the benefit of the labor organization. No
> such proceeding shall be brought except upon
> leave of the court obtained upon verified
> application and for good cause shown, which
> application may be made ex parte. The trial
> judge may allot a reasonable part of the recovery
> in any action under this subsection to pay the
> fees of counsel prosecuting the suit at the
> instance of the member of the labor organization
> and to compensate such member for any expenses
> necessarily paid or incurred by him in connection
> with the litigation.

This section thus allows a union member to bring a claim

for breach of fiduciary duties if:  "(1) the member asks

the union to bring suit and the union refuses or fails to

do so within a reasonable period of time; and (2) the

member demonstrates good cause."  Moran, 1993 WL 60898, at

*4.

**B.**

While Farrell disputes the plaintiff's representations

that the plaintiff never received responses to his letters

to Farrell and UWUA President Wightman requesting scrutiny

of the circumstances of Flaherty's retention, the

defendants do not allege that the plaintiff has failed to

meet the first requirement of § 501(b), namely, making a

demand to sue that meets with a refusal.

Although the language "good cause shown" in § 501(b)

is not otherwise defined, the Second Circuit Court of

Appeals defined "good cause" in <u>Dinko</u>.  The <u>Dinko</u> court
held that good cause should be "construed to mean that
plaintiff must show a reasonable likelihood of success and,
with regard to any material facts he alleges, must have a
reasonable ground for belief in their existence."  <u>Dinko</u>,
531 F.2d at 75; <u>accord</u> <u>Dunlop-McCullen v. Local 1-S, AFL-
CIO-CLC</u>, 149 F.3d 85, 89 (2d Cir. 1998); <u>Saunders</u>, 312 F.
Supp. at 65.

**1.**

To meet the first <u>Dinko</u> requirement for showing good
cause, the plaintiff must allege facts that, if proven
true, create a reasonable likelihood that the defendants
will be found to have breached their fiduciary duties as
they are described in § 501(a).  <u>See, e.g.</u>, <u>Bona v.
Barasch</u>, No. 01 Civ. 2289, 2003 WL 1395932, *32–33
(S.D.N.Y. March 20, 2003) (finding a likelihood of success
where the plaintiffs alleged that union officers personally
benefited from the diversion of nearly all union dues
receipts to outside entities for no valid union purpose).
The language of § 501(a) defines these duties, in summary,
by requiring a union representative to manage, invest, and
spend union funds or property in accordance with the
union's governing documents, to refrain from dealing "as an
adverse party" to the union and from acquiring any interest

18

that conflicts with the union, and to account for any
profit received by him from transactions he conducts on
behalf of the union.  See § 501(a).  The Second Circuit
Court of Appeals has construed the duties arising from §
501(a) narrowly according to the statutory language.  "A
simple reading of [§ 501] shows that it applies to
fiduciary responsibility with respect to the money and
property of the union and that it is not a catch-all
provision under which union officials can be sued on any
ground of misconduct with which the plaintiffs choose to
charge them."  Gurton v. Arons, 339 F.2d 371, 375 (2d Cir.
1964); accord Dunlop-McCullen, 149 F.3d at 93; Guzman v.
Bevona, 90 F.3d 641, 646 (2d Cir. 1996).[5]

There are two kinds of § 501 claims of breach of
fiduciary duties with respect to "money and property":  (a)
those claims where a fiduciary has acted beyond his
authority, or (b) those claims where a fiduciary has
personally benefited from a union transaction, and the
expenditure was "manifestly unreasonable," even though that
transaction had been authorized.  See Guzman, 90 F.3d at
645-46; Morrisey v. Curran, 650 F.2d 1267, 1274 (2d Cir.

---

[5]   Several other courts of appeals have taken a more expansive view of
"fiduciary duties" for union officers the breach of which can be the
basis for suit under § 501.  See, e.g., Corea v. Welo, 937 F.2d 1132,
1143-44 (6th Cir. 1991) (acknowledging non-financial aspects of § 501(a)
of the LMRDA); Pignotti v. Local #3 Sheet Metal Workers' Int'l Assoc.,
477 F2d 825, 832-35 (8th Cir. 1973) (collecting cases).

1981); McNamara v. Johnston, 522 F.2d 1157, 1163 (7th Cir.
1975); Dunlop-McCullen v. Pascarella, No. 97 Civ. 195, 2002
WL 31521012, at *15 (S.D.N.Y. Nov. 13, 2002).

The plaintiff's allegations fail to raise a plausible
claim that any defendant has acted beyond his or her
authority, as laid out in the union's Constitution, By-
Laws, or any other governing procedures.  While the
plaintiff has attempted to characterize Flaherty's
retention as unauthorized because of the 1999 Agreement
between Flaherty and the UWUA, this contract argument
cannot succeed given the undisputed facts.  Farrell sought
consent from UWUA President Wightman before retaining
Flaherty, and Wightman agreed that it would not violate the
1999 Agreement for Flaherty to work as a non-member
consultant for Local 1-2.  As the other signatory of the
1999 Agreement, Wightman holds particular persuasive force
in interpreting it.

The plaintiff alleges that Local 1-2 was a third-party
beneficiary under the 1999 Agreement, and thus that
Wightman and Farrell could not "interpret away" the clauses
barring Flaherty from working for the union without Local
1-2's consent.  But the plaintiff never disputes the fact
that Flaherty's contract was approved not only by Farrell,
Wightman, and the Executive Board, but also by a vote of

the full membership of Local 1-2—in fact, by a vote at a
membership meeting which the plaintiff attended and during
which the plaintiff specifically questioned Flaherty's
contract.  The plaintiff has presented no credible argument
that there was a breach of the 1999 Agreement for which
Local 1-2 could sue.

Moreover, to allow the plaintiff to challenge the
fully-authorized retention of Flaherty as a consultant
would contravene the limited role of the courts in
supervising the internal employment decisions of unions.
See, e.g., Hoffman v. Kramer, 362 F.3d 308, 322 (5th Cir.
2004) ("[D]isagreements over the wisdom or appropriateness
of particular administrative and employment actions and
decisions are usually not amenable to suit under the
LMRDA.").

Nowhere has the plaintiff alleged that any of the
defendants has, by retaining Flaherty as a consultant,
benefited personally at the union's expense.  Instead, the
plaintiff's allegations center upon Flaherty's potential
once again to mismanage union assets, and upon the 1999
Agreement Flaherty signed with the UWUA.  While Local 1-2
is paying Flaherty at a senior level, President Farrell has
described Flaherty's duties to justify that expense and
alleges that paying Flaherty as a consultant has been a

"money saver" for Local 1-2.  (Farrell Decl. ¶ 30.)  The plaintiff has not produced any evidence or allegation rebutting Farrell's argument; instead, his allegations appear to amount to mere innuendo about future risks of financial losses because of Flaherty's proximity to union assets.  In Head v. Brotherhood of Railway, Airline and Steamship Clerks, the Second Circuit Court of Appeals found that no § 501 action could be sustained where the plaintiff "envisions the possibility that union funds will be mishandled in the future as a result [of union officers' conduct], [but the plaintiff] does not allege any present wrongdoing of that type."  512 F.2d 398, 400 (2d Cir. 1975) (dismissing claim that a national union's restructuring plan that eliminated local lodges could constitute a breach of fiduciary duties under § 501(a)).  Moreover, the plaintiff has failed to allege how the hiring of Flaherty as a consultant has personally benefited any of the defendants.

Because the plaintiff has not alleged any self-dealing or personal benefit by the defendants and has failed to rebut facts showing that the defendants' acts were fully authorized, his § 501(b) claim does not meet the "likelihood of success" requirement imposed by Dinko.

**2.**

The plaintiff has also failed to meet the second <u>Dinko</u> requirement—namely, a reasonable basis for belief in any facts alleged.  In particular, the affidavits presented to the Court by the plaintiff and the defendants show that the plaintiff has no reasonable basis for believing that Flaherty's contractor status is forbidden by the 1999 Agreement or by any other union rule.

The plaintiff has attempted to allege further facts in support of his claim by submitting the Affidavit of Robert Zahn along with his response to the motion to dismiss. (<u>See</u> Zahn Aff., March 9, 2006.)  Putting aside the fact that Zahn's allegations did not appear in the plaintiff's initial complaint, they fail to present any evidence of any personal benefit to the defendants from hiring Flaherty. Furthermore, to the extent that they are presented to show possible wrongdoing by Flaherty, they fail to show that Flaherty was responsible for any of the alleged conditions about which Zahn complains.[6]

Because the plaintiff has failed to establish a likelihood of success or to provide any reasonable basis

---

[6]   It is unnecessary to reach the defendants' argument that the plaintiff is guilty of "unclean hands" by allegedly misrepresenting that he received no response to his complaints when the evidence shows that responses were sent and the evidence strongly suggests that the plaintiff received them.

for belief in his allegations, under Dinko his § 501 claim
cannot proceed.  Judge Jones's order granting the plaintiff
leave to sue pursuant to 29 U.S.C. § 501(b) is thus
vacated, and the plaintiff's first claim is **dismissed**.

### III.

The plaintiff brings an additional cause of action
under New York State Labor Law sections 722 and 723.  The
defendant Farrell's motion to dismiss does not specifically
address this claim, but the Court retains the power to
determine whether it has subject matter jurisdiction to
allow these claims at any rate.  See Fed R. Civ. P.
12(h)(3) ("Whenever it appears by suggestion of the parties
or otherwise that the court lacks jurisdiction of the
subject matter, the court shall dismiss the action.");
FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990)
(the court has an independent duty to examine its basis for
jurisdiction); United Food & Commercial Workers Union v.
Centermark Properties Meriden Square, Inc., 30 F.3d 298,
301 (2d Cir.1994) ("[I]t is common ground that in our
federal system of limited jurisdiction any party or the
court sua sponte, at any stage of the proceedings, may
raise the question of whether the court has subject matter
jurisdiction.") (internal quotation marks omitted).

Because the plaintiff's § 501(b) claim is dismissed and there are no remaining federal claims, the Court declines to exercise supplemental jurisdiction over this purely state law claim. See 28 U.S.C. § 1367(c)(3); Valencia ex rel. Franco v. Lee, 316 F.3d 299, 304-06 (2d Cir. 2003). Therefore, the plaintiff's state law claim against all defendants is **dismissed without prejudice**.[7]

## CONCLUSION

For all of the foregoing reasons, the order granting leave to the plaintiff to sue pursuant to 29 U.S.C. § 501 is **vacated** and the defendants' motion to dismiss the plaintiff's first cause of action is **granted**. The plaintiff's second cause of action is **dismissed without prejudice**, for lack of subject matter jurisdiction.

The Clerk is directed to enter judgment and to close the case.

**SO ORDERED.**

**Dated: New York, New York**
**September 26, 2006**

John G. Koeltl
United States District Judge

---

[7] In their Reply Memorandum, the defendants for the first time request costs. (See Def.'s Reply Mem. in Further Supp. of Their M. to Dismiss, at 5.) Under Federal Rule of Civil Procedure 54(d)(1), "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." The defendants have not requested attorneys' fees and any statutory costs should be modest. In any event, if a request for costs is pursued, the parties should follow the procedures under Rule 54(d)(1).